**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DAWN GEORGETTE MYERS,

      Plaintiff,

v.                               CASE NO.: 6:04-cv-1542-Orl-28DAB

CENTRAL FLORIDA INVESTMENTS,
INC., DAVID SIEGEL, WESTGATE
RESORTS, INC., WESTGATE RESORTS,
LTD., WESTGATE LAKES, INC.,
WESTGATE LAKES, LTD., CFI SALES
& MARKETING, LTD.,

      Defendants.

_____/

**PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO MOTIONS TO**
**DISMISS BY SIEGEL (DOC 53) AND WESTGATE (DOC 54)**

      Plaintiff Myers respectfully opposes Doc 53, Defendant Siegel's motion to dismiss Count VI (inducement to prostitution) and Count VIII (false imprisonment). Plaintiff Myers further respectfully opposes Doc 54, the motion of the corporate Defendants (collectively "Westgate") to dismiss all Counts of the Second Amended Complaint, Counts I and III (gender discrimination/sexual harassment); Counts II and IV (retaliation); Count V (Florida Whistleblower); Count VI (inducement to prostitution); Count VII (battery); Count VIII (false imprisonment); and Count IX (negligent supervision and retention). As shown below, both motions are without merit and must be denied.

1

## MEMORANDUM OF LAW

### I. Defendants' Err on Limitation Date

The removal papers in this case show that Plaintiff first made her sexual harassment and related claims in a counterclaim in a County Court proceeding filed on May 20, 2004. The case was transferred to Circuit Court on or about October 1, 2004, a bit over four months later. Without explanation, Westgate uses that latter date in its motion to dismiss. For some of the causes of action in this case with a four-year statute of limitations, that period of 134 days is critical. Much happened among the parties between May 20, 2000, and October 1, 2000, that could be time-barred if the latter date is used. Plaintiff presumes Defendants will correct the error on the record.


### II. Standard of Review

The Supreme Court just three years ago issued yet another comprehensive restatement of the disfavor with which it regards motions to dismiss for failure to state a claim upon which relief may be granted. Swierkiewicz v. Sorema, 534 U.S. 506 (2002). The court has been compelled to issue such major opinions at increasingly frequent intervals, reiterating the same points. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993); Hishon v. King & Spalding, 467 U.S. 69 (1984); Scheuer v. Rhodes, 416 U.S. 232 (1974). The law has not changed substantially since 1957 despite tireless efforts of the defense bar to lower the standard. The two most recent iterations, Leatherman and Swierkiewicz, have involved civil rights cases, the area in which the pressure is greatest to change the law of pleading; but there is no change.

A complaint is not to be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson,

355 U.S. 41, 45-46 (1957).  The burden of demonstrating that no claim has been stated is on the movant.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232 (1974).  Furthermore, "in reviewing the sufficiency of a complaint in the context of a motion to dismiss [the court must] ... treat all of the well-pleaded allegations of the complaint as true."  Miree v. Dekalb County, Ga., 433 U.S. 25, 27 n.2 (1977).  Finally, since a motion to dismiss is an adjudication on the merits and amounts to res judicata, Hubicki v. ACF Indus., 484 F.2d 519, 523 (3d Cir. 1973), a court should only grant such a motion in the most extraordinary circumstances.  Corsican Prod. v. Pitchess, 338 F.2d 441, 442 (9th Cir. 1964).

### III.  The Cause of Action in § 796.09 Covers Unsuccessful Solicitations of Prostitution

Both Siegel and Westgate seek to dismiss Count VI in identical language.  Defendants do not contest that the Second Amended Complaint duly recites several instances in which Siegel offered Plaintiff money for sex.  Instead, Defendants have argued that one must actually engage in prostitution in order to be eligible to sue under the cause of action created by §796.09, Florida Statutes.  This appears to be a simple error in reading the statute.

The Florida civil statutory cause of action for prostitution uses the word "coercion" in a broader sense than the most common meaning, but the statute still takes care to define the term so that the meaning is too plain to make a mistake about what is stated and intended.  Paragraph (3) of §796.09 defines "coercion" as:

> **any practice of** domination, restraint, or **inducement for the purpose of** or with the reasonably foreseeable effect of **causing another person to engage in** or remain in **prostitution** or to relinquish earnings derived from prostitution.

<u>Id.</u> (emphasis added).

Thus with non-material ellipses, the controlling language pertinent here is:

any practice of . . . inducement for the purpose of  . . . causing another person to engage in . . . prostitution . . . .

<u>Id</u>.  The point is the intent of the offender rather than the success of the offense.

Thus a  mere solicitation qualifies as an inducement under the civil side, just as it often leads to an arrest on the criminal side, even if no sexual conduct follows the solicitation.  <u>See</u>, <u>e.g.</u>, §796.07(2)(f), Florida Statutes, making it a crime, "To solicit, induce, entice, or procure another to commit prostitution . . . ."  Whatever is a criminal offense under § 796.07 is a civil offense under §796.09.  To illustrate further, in the familiar "sting" scenario of a "John" being arrested after offering a sum of money for a sex act to a policewoman on a street corner, the policewoman has also a civil cause of action under § 796.09.  The actual damages may be small in that scenario, but the statute also provides for punitive damages, which might be substantial even in a scenario with little or no actual injury to the plaintiff.

Some examples of how one may be "coerced" into an act of prostitution for purposes of §796.09 are listed in the statute's paragraph (3).  Notably, a "promise" can be a means of coercion under the statute.  Section 796.09(3)(h)-(j).  The definition is as broad as it is because of the many policy concerns that drove the passage of the statute.  <u>Balas v. Ruzzo</u>, 703 So. 2d 1076,  1078-79 (Fla. 5th DCA 1998).

In concluding that a plaintiff under the statute must already be a practicing prostitute, Defendants rely wholly upon <u>Sasser v. Clinic Pulmonary and Infectious Diseases, P.A.</u>, Case No. 3:02-cv-1144-J-20-HTS (M.D. Fla. March 6, 2003).  The error in that reliance is obvious.  The court

4

explained its reasoning as follows:

> [T]he plain meaning of the statute provides a cause of action against a person who has coerced (past tense) another into prostitution or who coerces (present tense) another to remain in prostitution.  The statute's change of tense clearly indicates an intention to provide a cause of action for those actually engaged in prostitution.

Id. at 3.  By overlooking the statute's definition of "coercion" as including "inducement," the learned judge completely missed the future-tense application of the law to those solicited for prostitution who have not succumbed.  This is no small point in the purpose and effect of the statute.

The Legislature's attack on prostitution has always had a preventive as well as a remedial component.  It is a simple recognition that for every prostitute there is a first time and that first time starts with an offer.  In both the criminal and the civil law, exposing the solicitor of prostitution to arrest and suit attacks prostitution at the front end, protecting potential targets and penalizing predators who make even unsuccessful attempts.  There has never been a legislative or judicial attempt to define what it means to be "already in prostitution" as though one could point to a certain frequency of conduct or a certain passage of time since the last occurrence to determine who is currently in or out of the trade and thereby protected by the statute, as the Sasser opinion seems to suggest.  A more careful reading and analysis shows that the Sasser opinion should not be regarded as authoritative.

**IV.  Plaintiff's Allegations Are Sufficient To Support a False Imprisonment Claim**

Both motions seek dismissal of the false imprisonment count in identical language, with all Defendants claiming to have made a diligent search of the Second Amended Complaint and not been able to locate any language that would support such a cause of action.  However, one particularly

striking example may suffice to show that the alleged search of the pleading was not so diligent:

> 217. On or about June 1, 2000, Defendant Siegel pinned Plaintiff against the wall in the lobby of the spa, saying how good Plaintiff looked in the sweater she was wearing.

Second Amended Complaint, ¶ 217.

Plaintiff has even alleged force for that one incident, though no such allegation is necessary. Kanner v. First National Bank, 287 So. 2d 715, 717 (Fla. 3d DCA 1974) (stating that "false imprisonment is the unlawful restraint of a person against [her] will. . . . the restraint must be unreasonable and unwarranted under the circumstances."); Harris v. Lewis State Bank, 436 So. 2d 338, 341 (Fla. 1st DCA 1983) (stating that "the plaintiff need not show that force was used in the detention.").  See also Lewis v. Atlantic Discount Company, Inc., 99 So. 2d 241, 242 (Fla. 1st DCA 1957) ("'words are sufficient to constitute an imprisonment if they impose a restraint upon a person's liberty of action and movement'") (quoting 22 Am.Jur., False Imprisonment 359, 361-62).

False imprisonment may consist of actions of very short duration, such as seizing a person in a momentary "bear hug." This is so even under the more exacting criminal standard for false imprisonment.  Jane v. State, 362 So. 2d 1005 (Fla. 4th DCA 1978).  In a case remarkably similar to this one, an older man of great wealth, with a cluster of related corporations, engaged in a variety of acts of harassment against a young female employee.  The court found false imprisonment on similar facts.  Stockett v. Tolin, 791 F. Supp. 1536, 1556 (S.D. Fla. 1992) ("the act of pinning Plaintiff against the wall and refusing to allow her to escape, even though only done for a short period of time, was false imprisonment").  Thus the Second Amended Complaint states a claim for false imprisonment.

### V.  Plaintiff's Claims Fall Within Pertinent Statutes of Limitations

Defendants argue that both the statutory prostitution claim and the common law false imprisonment claim are barred by four-year statutes of limitations.  Defendants contend that since neither of these counts appeared previously under those labels, the four year limitation runs back to April 27, 2001, four years before the Second Amended Complaint, a date months after Plaintiff's last contact with Siegel.  Plaintiff agrees that four years is the correct time, but contends that the operative date is May 20, 2000, about seven months before the last contacts with Siegel because that date is four years before the original complaint in this case.  That original complaint set forth conduct, transactions, and occurrences including offers of sex for money, unwanted touching of various kinds, and an assortment of similar behavior.

Commonly known as the "relation back" doctrine, the law on this point is the same under both federal and state law, as shown below.  Generally, it does not matter that the original complaint did not plead the same counts or even the same facts so long as it was about the same general conduct, events, and occurrences.

This is a case about sexual harassment at work, a firing for refusal to sleep with the principal owner of the various related companies, and post-termination retaliation through litigation and otherwise.  To the extent that an amended complaint stays within those general bounds, it relates back.  If the amended complaint sought to add an otherwise time-barred action for, say, a car crash involving these defendants, that would not relate back.  Defendants labor under the misapprehension that the counts and the allegations of fact must be the same.  This is wrong.  Factual details are subject to the notice pleading of Rule 8.  They are for discovery and trial, not pleading.  Legal theories may change as long as the basic contours of the course of conduct remain the same.

## A.  Federal Civil Procedure

Federal Rule of Civil Procedure 15(c)(2) provides:

**Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ....

This is commonly recognized as the operative rule governing relation back of amended pleadings. Woods Exploration & Producing Co., Inc. v. Aluminum Co. of Am., 438 F.2d 1286, 1299 (5th Cir.1971) (quoting Williams v. United States, 405 F.2d 234, 236 (5th Cir.1968)); see also Woods: "Rule 15(c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced." Id., 438 F.2d at 1299 (quoting Williams, 405 F.2d at 236 (quoting 3 James Wm. Moore, Moore's Federal Practice ¶ 15.15(2), at 1021)).

The Federal rule on the "relation back" of amendments to pleadings, as embodied in Federal Rule 15(c), is permissive. As long as the amended complaint refers to the same transaction or occurrence that formed the basis for the original complaint and the defendant was put on notice of the claim by the first complaint, there will be no bar to amendment; even new defendants and new theories of recovery will be allowed. Williams, 405 F.2d at 237 (quoting Travelers Ins. Co. v. Brown, 338 F.2d 229, 234 (5th Cir.1964)).

## B.  Florida Civil Procedure

Fla.R.Civ.P. 1.190(c) is essentially the same as Fed.R.Civ.P. 15(c).  Florida courts follow the same doctrine as the federal courts, allowing "relation back" amendments where the same conduct,

transactions, or occurrences are involved even if the amended pleading is not organized into the same causes of action or legal theories as the original.

An amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim. <u>Holley v. Innovative Tech.of Destin, Inc.</u>, 803 So.2d 749, 750 (Fla 1st DCA 2001); <u>Dausman v. Hillsborough Area Regional Transit</u>, 898 So. 2d 213, 215 (Fla. 2d DCA 2005).

## VI.  No Basis Exists For Splitting Up Counts

Siegel has moved to dismiss certain unspecified acts of battery that he alleges to be time-barred, while conceding that certain unspecified other acts of battery fall within the limitations period.  This theme recurs in other sections of the two motions to dismiss.  Siegel may be struggling to express a concern that actually has some merit -- a concern about liability for time-barred acts of the same kind as those not time-barred, but a motion to dismiss is far from an appropriate vehicle to address those issues.

Many older events are relevant in this case for various reasons even if Plaintiff can not recover money for them.  Under one controlling doctrine, otherwise time-barred events come in to show motive and state of mind and to fill in the general setting and history to make better sense of the story. <u>United Airlines v. Evans</u>, 431 U.S. 553, 558 (1977) (time-barred events "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue"); <u>Ross v. Rhodes Furniture</u>, 146 F.3d 1286, 1291 (11th Cir. 1998) (evidence too old to prove prima facie case may be used to show pretext).  Under a second controlling doctrine, an uninterrupted hostile environment may go on for many years and be actionable for the duration so long as one

event falls within the limitations period.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  It is at the jury instruction stage -- pre-trial and after closings --  that the court informs the jury of the various limitations periods.  Limitations periods are relevant at the pleadings stage only in those rare cases where a time-bar appears on the face of the complaint.  This is not one of those cases.

## VII.  Title VII Claims Are Timely

Westgate fired Myers on December 13, 2000.  That is within 300 days of September 12, 2001, the date Myers filed her charge with EEOC.   The Second Amended Complaint alleges that Plaintiff was fired for her refusal to enter into a sexual relationship with Siegel.  This is not a minor claim in the case.  So it is surprising that Westgate made a thorough search of the pleading and came up empty in the quest for an actionable event within the EEOC charging period.  The firing on December 13, 2000, is recounted over ¶¶ 259-269 of the Second Amended Complaint. At ¶ 252, Plaintiff recounts a suspension on December 6, 2000.  This is also after the date of November 19, 2000, that Westgate claims as the starting point for actionable discrete events.  There is thus no timeliness problem or exhaustion problem for Plaintiff on either her discrete-event claims nor, as shown below, on her hostile environment claim.

Plaintiff has alleged a hostile environment based on sex dating back, without interruption, for years and extending into the actionable charge period under Title VII.  In ¶¶ 248-249 Plaintiff alleges that Siegel continued to touch and grab her in every session in November, 2000, and that the sessions went up through the Thanksgiving holiday.  That too is after November 19, 2000.  This conduct in the charging period is part of an unbroken chain of similar conduct of both a sexual and non-sexual nature going back years and constituting a hostile environment based upon gender.  It

is thus actionable under Title VII.  National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).

Whether a firing for refusing sexual intimacies is an act of discrimination or an act of retaliation under the "opposition clause" or both is a longstanding theoretical tangle under Title VII. The answer is probably case specific.  But in any case, we need not reach that here.  The suspension, the firing, and all the other acts of retaliation alleged fall after November 19, 2000, and are thus actionable even under Westgate's analysis.

### VIII.  Plaintiff's Allegations Are Sufficient To State A Retaliation Claim

### A.  Prima Facie Case Is Not a Cognizable Issue On A Motion To Dismiss

Westgate's first substantive argument in favor of dismissal of the retaliation claims under Rule 12(b)(6) is that Plaintiff has allegedly failed to state a prima facie case of retaliation.  That is false, but it is not necessary to reach the merits in light of the fact that there is an entire recent U.S. Supreme Court opinion explaining that a failure to state a prima facie case can not be a basis for dismissal under Rule 12(b)(6).  Swierkiewicz v. Sorema, 534 U.S. 506 (2002).

> This case presents the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the framework set forth by this Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We hold that an employment discrimination complaint need not include such facts and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 502.  Westgate's argument must be rejected on that basis alone.

### B.  Title VII Retaliation May Take Form Of Litigation

Westgate's next contention is that Title VII retaliation can not take the form of litigation and

legal processes. But this is contrary to established law dating back to the early days of Title VII and continuing to the present. Steffes v. Stepan Co., 144 F.3d 1070, 1075 (7th Cir. 1998) ("retaliatory acts come in infinite variety . . . and even actions taken in the course of litigation could constitute retaliation in appropriate circumstances");     EEOC v. Virginia Carolina Veneer Corp., 495 F. Supp. 775, 777 (W.D. Va. 1980) (employer unlawfully retaliated against employee by bringing a civil suit in response to discrimination charge); Urquiola v. Linen Supermarket, Inc., 1995 WL 266582 (M.D. Fla. 1995) (same); EEOC v. Levi-Strauss & Co., 515 F. Supp. 640 (N.D. Ill. 1981) (bad-faith suit against employee would be retaliation for Title VII purposes); Berry v. Roger Stevinson Chevrolet, 74 F.3d 980 (10th Cir. 1996) (actionable retaliation where employer had former employee criminally prosecuted in retaliation for expressed intention to file a discrimination charge); Beckham v. Grand Affair, 671 F. Supp. 415, 419 (W.D.N.C 1987) (causing former employee to be arrested and prosecuted is actionable retaliation; form of retaliation need not be job-related); Atkinson v. Oliver T. Carr Co., 40 FEP Cases 1041 (D.D.C. 1986) (retaliation found for employer's threat to commence criminal prosecution if employee did not withdraw charge of discrimination); Perez v. FBI, 707 F. Supp. 891 (W.D. Tex. 1988) (employer secured grand jury subpoena for telephone records of charge-filing employee); Gliatta v. Tectum, Inc., 211 F. Supp. 2d 992, 1008-09 (S.D. Ohio 2002) (counterclaim retaliatory) (citing EEOC v. Outback Steakhouse of Florida, Inc., 75 F. Supp. 2d 756 (N.D. Ohio 1999) (same)); Cozzi v. Pepsi-Cola Gen. Bottlers, Inc., No. 96 C 7228, 1997 WL 312048, at *3 (N.D. Ill. June 6, 1997) (state court fraud lawsuit retaliatory).

## C.  Errors In Westgate's Basic Theoretical Understanding Of Timing In Retaliation

Westgate is hard to please on the timing issue, arguing that some of the litigation-based retaliation alleged by Plaintiff came too early to be retaliatory while other such actions came too late.

12

Some of this confusion comes from the error of focusing so exclusively on the date of Plaintiff's charge in relation to the dates of the retaliatory litigation. This overlooks the fact that the retaliation provision of Title VII has both a participation clause and an opposition clause, with the latter allowing suit on retaliatory actions unrelated to formal charges. 42 U.S.C. § 2000e-3(a). See, e.g., Wideman v. Wal-Mart Stores, 141 F.3d 1453, 1454 (11th Cir. 1998). Plaintiff's repeated objections to -- and internal complaints about -- Siegel's sexual propositions, touching, and other unwelcome attention are protected activity supporting a retaliation claim. This is certainly not to concede any of Westgate's contentions about the charge or its timing, but to show that there is a basis for a retaliation suit quite apart from the EEOC charge.

The cluster of retaliatory acts in this case is varied. The suspension and firing came before the EEOC charge. The first retaliatory suit came right after the EEOC charge, the second just as the charge was about to ripen into a lawsuit. The threats to witnesses came at various points. Discovery, summary judgment practice, and trial are the places to flesh out these pictures, not motions under 12(b)(6).

Further, the timing of retaliation in response to protected activity is not a subject a court may consider on a 12(b)(6) motion. It is a purely factual issue of causation. The court may not decide it even on summary judgment, let alone at this stage. Kim v. Nash Finch Co., 123 F.3d 1046, 1060-61 (8th Cir. 1997). Sometimes retaliation swiftly follows protected conduct. Sometimes it takes years. Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) (firing two years after protected activity shown to be retaliatory because of lesser forms of retaliation occurring over those two years); Coates v. Dalton , 927 F. Supp. 169, 170 (E.D. Pa. 1996)(four years between protected activity and retaliation); Loiseau v. Department of Human Resources, 5677 F. Supp. 1211 (D. Or. 1983)(two

13

years between protected activity and retaliation); <u>Brumback v. Callas Contractors</u>, 913 F. Supp. 929

(D. Md. 1995)(five months not too long).


## IX.  Valid Claim Under Florida Whistleblower Act

### A.  Scope Of Protection

Violations of the retaliation wing of Title VII and the Florida Civil Rights Act are also

capable of redress under the Florida Whistleblower Act, §§ 448.101-105, Florida Statutes.  <u>Gray v.

Webco General Partnership</u>, 36 F. Supp.2d 1331 (M.D. Fla. 1999); <u>Jenkins v. The Golf Channel</u>, 714

So.2d 558 (Fla. 5th DCA 1998);  <u>Costa v. School Board of Broward County</u>, 701 So.2d 414 (Fla.

4th DCA 1997).  The suspension and firing, the retaliatory litigation, the witness tampering and

intimidation all constitute retaliation under the discrimination statutes and so constitute violations

of the whistleblower statute.

Westgate speaks at length about an alleged failure to state a *prima facie* case of retaliation,

citing authority to the effect that Title VII burden-shifting analysis applies to this statute.  That may

be true, but so too is the doctrine that failure to state a *prima facie* case is no excuse for a 12(b)(6)

motion in federal practice.  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002).  Even so, there is not

room for doubt that Plaintiff has stated a *prima facie* case.

The offending conduct of the employer need only be a violation of a "law, rule, or

regulation." § 448.102(3).  The violations of law may be violations of civil rights statutes as in the

authorities above.  Or the violations may be of statutes related to tampering with or intimidating

witnesses.  <u>Baiton v. Carnival Cruise Lines, Inc.</u>, 661 So. 2d 313 (Fla. 3d DCA 1995). This is the

conduct alleged in ¶ 281 of the Second Amended Complaint.

14

The Whistleblower statute defines three sorts of protected conduct. Disclosure, at § 448.102(1); participation, at § 448.102(2); and objection, at § 448.102(3). Only the disclosure wing requires written disclosure to a government agency before the retaliatory act occurs. Westgate alleges the contrary, apparently unaware that there is an entire landmark state supreme court decision holding the opposite on this very point. The Golf Channel v. Jenkins, 752 So. 2d 561 (Fla. 2000). Westgate retaliated against Myers in part because of her sworn and written complaints to government but also because of her objections to unwanted sexual advances and disparate treatment based on gender.

## B. Act Protects Former Employees

Westgate claims that the protection conferred by the Whistleblower Act ends at the moment the employment ends. The U.S. Supreme Court has shown the folly of such a formulation in Title VII cases. Robinson v. Shell Oil Co., 519 U.S. 337 (1997).

Westgate's reading would provide employers a perverse incentive to fire employees before inflicting the worst retaliatory injuries on them. This could not be the intent of the Legislature, which meant for this statute to be construed liberally to grant access to the remedies contained therein, with all reasonable doubts as to the law's application resolved in favor of access to the remedy. The Golf Channel v. Jenkins, 752 So. 2d 561, 567 (Fla. 2000).

As it has done with nearly all else in this motion, Westgate contends that the Whistleblower count should be dismissed because some of the offenses Defendants committed fall outside the statute of limitations. But some fall within. There is no special reward of dismissal for offenders who commit offenses that fall on both sides of the limitations bar. As shown elsewhere in this response, the offenses that are time-barred for damage purposes are still relevant to motive, intent,

15

background facts, and hostile environment.

## X.  Westgate Is Vicariously Liable For Siegel's Torts

The gist of Westgate's argument on the state law torts of battery, false imprisonment, and solicitation of prostitution is that the companies can not be held accountable for the torts of Siegel because sexually harassing Plaintiff was outside the scope of his duties as owner and chief executive officer of the companies and that his motives in the sexual harassment were personal rather than motivated by a desire to serve the interests of the corporations.  Therefore, Westgate argues, the acts of Siegel are not the acts of Westgate.  But this is the wrong theory of liability.  Where the offender is sufficiently high-ranking, his acts are those of the company even for purposes of punitive damages, let alone mere compensatory damages.

In Schropp v. Crown Eurocars, Inc., 654 So. 2d 1158 (Fla. 1995), the Florida Supreme Court explained:

> A review of the case law in Florida reveals two methods have been established by which a corporation may be held liable for punitive damages: (1) vicarious liability based on the willful and malicious actions of an employee with a finding of independent negligent conduct by the corporation; or (2) direct liability based on the willful and malicious actions of managing agents of the corporation.

Id. at 1159.  The Court cited Mercury Motors  Express, Inc. v. Smith, 393 So. 2d 545 (Fla. 1981), as the controlling authority for the first theory, that of vicarious liability.  Plaintiff has alleged willful and wanton actions of Siegel and independent fault by the corporate defendants in their failure to supervise Siegel and in their failure to have policies implemented in the workplace that would detect and rectify sexual harassment.  Plaintiff need not rely on the Mercury Motors theory, however.  This is because she has alleged Siegel's managing agent status within the corporate defendant.  Where

a corporation's managing agent has committed the willful and malicious actions, damages may be awarded on the basis of direct liability.  Schropp v. Crown Eurocars, Inc., 654 So. 2d at 1160 (citing Bankers Multiple Line Insurance Co. v. Farish, 464 So. 2d 530, 533 (Fla. 1985)).  Accordingly, under the second theory explained by the Court in Schropp, that of direct liability, it is appropriate to plead entitlement to damages against the corporate defendants.  Westgate's argument appears to be that nothing short of evidence that the company adopted a job description that calls for sexual harassment is enough to trigger corporate liability.  On the contrary:

> it is axiomatic that a corporation can act only through its agents.  Thus when the agent of a corporation which causes the harm is the managing agent or primary owner of the corporation, punitive damages may be assessed against the corporation for the acts of the managing agent.

Stockett v. Tolin, 791 F. Supp. 1536, 1560 (S.D. Fla. 1992); Schropp, 634 So. 2d at 1159 (same).

Westgate disingenuously presents *respondeat superior* as the only vehicle for vicarious liability.  But *respondeat superior* is but one of six theories defined in the Restatement (Second) of Agency and recognized in Florida.  It is the first in the following list:

§219(1) -- action in scope of and in furtherance of employment

§219(2)(a) -- employer intended act or consequence

§219(2)(b) -- employer negligent or reckless

§219(2)(c) -- non-delegable duty

§219(2)(d) -- action with apparent authority **or** aided by the agency relation

The discussion above treated §219(2)(a), where the offender is a managing agent -- here even an "alter-ego" -- of the companies.  This is one means by which the companies can be said to intend the offending acts. Also pertinent here are the theories of negligent or reckless conduct under

17

§219(2)(b), and conduct aided by the agency relation under the second half of §219(2)(d).  These require no motive by the offender to serve the employer and no action within the scope of employment.  The negligence branch of agency is exemplified in our jurisdiction by <u>Dees v. Johnson Controls World Services, Inc.</u>, 168 F.3d 417 (11th Cir. 1999) (employer knowledge of prior harassment by same offenders established vicarious liability).  The "aided-by-the-agency-relation" method of imputing liability often informs tort inquiries under the common law of agency, especially §219(2)(d), in sexual harassment cases.  Cases such as  <u>Sparks v. Pilot Freight Carriers, Inc.</u>, 830 F.2d 1554, 1559 (11th Cir. 1987), allowed employer liability wherever the harasser had used some authority or instrumentality or access which he could not have used but for a grant of privilege or power of some sort by the employer.  This remains a viable doctrine for common law torts in most of the United States, including Florida.  <u>Nazareth v, Herndon Ambulance Service</u>, 467 So. 2d 1076, 1078 (Fla. 5th DCA , <u>rev</u>. <u>den</u>., 478 So. 2d 53 (Fla. 1985) (employer may be liable for employee's sexual assault though offender acted for own purposes where act was aided by the agency relation); <u>Industrial Insurance Co. of New Jersey v. First National Bank of Miami</u>, 57 So. 2d 23 (Fla. 1952) (principal may be liable for acts of agent even where agent acts entirely for his own purposes); <u>Byrd v. Richardson-Greenshields Securities, Inc.</u>, 552 So. 2d 1099 (Fla. 1989) (approving in principle claims of vicarious liability for assault and battery, intentional infliction of emotional distress, and negligent hiring and retention in sexual harassment case).

The law of ratification likewise comes into play where, as alleged throughout this complaint, a company learns of an offense by a high executive and seeks to cover it up or conduct a biased investigation to excuse the offender or blame the victim. <u>Blackburn v. John Hancock Mutual Life Insurance Co.</u>, 587 So. 2d 506 (Fla. 1st DCA 1991) (Schwartz, J., dissenting) (biased response to

complaints condones, confirms, and ratifies offending conduct).

The Second Amended Complaint also alleges full knowledge by other officials of Westgate of Siegel's sexual harassment and related offenses.  As alleged at ¶ 247, when Plaintiff took her sexual harassment issues to the company human resources officer, that officer said, "what are you going to do? He's the president of the company."  The complaint recites several instances in which other company officials urged Plaintiff to submit to Siegel's sexual advances, or assisted in setting up situations where he had access to her, or engaged in concerted actions to punish her refusal. Ratification occurs when the principal has full knowledge of the agent's acts and manifests an intention to ratify them.  G & M Restaurants Corp. v. Tropical Music Service, Inc., 161 So.2d 556, 557-58 (Fla.2d DCA1964).

### XI.  Plaintiff Has Properly Pled Negligent Supervision and Retention

Westgate presents two discredited theories in support of its motion to dismiss the negligent supervision and retention count of the Second Amended Complaint.  One is the claim that this tort may not use statutory torts as the underlying offense.  The second is the claim that negligent supervision and retention is subject to the impact rule.

### A.  Underlying Tort May Be Statutory

The centerpiece of the defense argument for dismissal of the count for negligent supervision and retention is that only a common law tort, not a statutory tort, can serve as the underlying tort in a negligent supervision and retention case in Florida.  This is a myth of recent vintage never accepted by the Florida Supreme Court nor any Florida appellate court.

Negligent supervision and retention require an analysis of two distinct torts: the negligence

19

of the employer, which is the cause of action, and the intentional or negligent offense of the employee who has injured the plaintiff.  See Texas Skaggs, Inc. v. Joannides, 372 So. 2d 985 (Fla. 2d DCA 1979).  The latter is commonly known as the "foundation" tort or the "underlying" tort.  It may or may not constitute a separate claim in the case.

This two-step tort first entered the Florida law of sexual harassment in the Florida Supreme Court's leading sexual harassment case, Byrd v. Richardson-Greenshields, Inc., 552 So. 2d  1099 (Fla. 1989), where negligent hiring and retention were among the counts alleged by the plaintiff, along with statutory causes of action, plus common law claims for intentional infliction of emotional distress, and assault and battery.  Id. at 1100.  The distinction between statutory actions and common law actions as foundations for negligent supervision and retention was not yet born, but the Supreme Court obliterated it anticipatorily, at least to the extent that it implicated statutes governing sexual harassment:

> Public policy now requires that employers be held accountable in tort for the sexually harassing environments they permit to exist, **whether the tort claim is premised on a remedial statute or on the common law.**

Id. at 1104 (emphasis added).

In one of the early cases on the argument Defendant now advances, Judge Kovacevich explicitly rejected that argument on the ground that discrimination statutes such as Title VII or its state counterpart could serve as the underlying tort.   No common law foundational tort was necessary.  Andrade v. Saturn Corp., Case No. 94-2077-CIV-T-17A (M.D. Fla. March 29, 1995), aff'd, 120 F.3d 275 (11th Cir. 1997) (table).  Andrade relied in part on Gomez v. Metro Dade County, 801 F. Supp. 674 (S.D. Fla. 1992), which in turn relied upon the passage quoted above in Byrd. Watson v. Bally Mfg. Corp., 844 F. Supp. 1533 (S.D. Fla. 1993) and Liberti v. Walt Disney World

20

Co., 912 F. Supp. 1494 (M.D. Fla. 1995) became additions to this line of cases.  Andrade is appended hereto.

A related but distinct line of cases emerged based upon rejecting the mistaken belief that Byrd had created a new common law action for sexual harassment.  Among these are Robertson v. Edison Bros. Stores, Inc., 1995 WL 356052 (M.D. Fla. April 11, 1995) and Yeary v. Florida Department of Corrections, 1995 WL 788066 (M.D. Fla. Oct. 10, 1995).  Perhaps most definitive is the oft-cited Vernon v. Medical Mgmt. Assoc. of Margate, 912 F. Supp. 1549, 1563-4 (S.D. Fla. 1996).

In the wake of this line of cases, great confusion arose from failure to apprehend a basic distinction.  It became clear that common law sexual harassment could not serve as the underlying tort for negligent supervision and retention for the simple reason that common law sexual harassment does not exist as an independent tort.  But from that followed an unsupported leap of logic by which employers contended that if the non-existent tort of common law sexual harassment was insufficient to serve as the underlying cause of action, then statutory sexual harassment must also be insufficient.  The obvious difference is that common law sexual harassment does not exist as a cause of action while Title VII and its state counterpart do indeed exist.

One court introduced a brief moment of clarity into the debate in Casey v. Wal-Mart Stores, 8 F. Supp.2d 1330 (N.D. Fla. 1998).  The court noted the correctness of the cases rejecting common law sexual harassment as the foundation tort and then spoke approvingly of  negligent retention being "based on a violation of Title VII or its Florida counterpart."  Id. at 1342.  The Court then addressed the same argument advanced in the instant motion with a skepticism bordering on disdain:

Moreover, even **if Defendant is somehow attempting to argue that as a**

21

> **prerequisite to bringing a negligent retention claim a plaintiff must plead an
> underlying common law tort**, Plaintiffs in the instant case have done so, alleging
> unlawful touching under a tort theory of common law battery.

Id. at n.18 (emphasis added).  What is clear in Casey is that the presence of the claim for battery is

an incidental point that appears only after the question was already resolved in favor of letting Title

VII and its state counterpart serve as the underlying torts.

        The lucidity proved to be short lived.  Judge Kovachevich returned to the issue in Scelta v.

Delicatessen Support Serv., Inc., 57 F. Supp.2d 1327 (M.D. Fla. 1999), stating:

> Under Florida law, the underlying wrong allegedly committed by an employee in a
> negligent supervision or negligent retention claim must be based on an injury
> resulting from a tort which is recognized under the common law.

Id. at 1348.

        Statutory torts are, of course, recognized under the common law, but putting that aside, let's

assume with Westgate that Scelta means to exclude them.

        Not a word of explanation was offered in support of this conclusion though no pertinent

development in the law had occurred since the time this same judge had found Title VII to be

perfectly adequate as the underlying tort and had been upheld on that point by the 11th Circuit in

Andrade.  Scelta cites two cases in support of the proposition.  A Florida case, Williams v. Feather

Sound, Inc., 386 So. 2d 1238 (Fla. 2d DCA 1980), may be read and re-read without finding a word

that even tangentially bears on the point for which it is cited.  The other case, Hayes v. Patton-Tully

Transp. Co., 884 F. Supp. 1221 (W.D. Tenn. 1993), does tend to support the proposition, but only

under Tennessee law, which has nothing like the doctrines established for Florida in Byrd.  The

considerable body of authority to the contrary under Florida law, as shown above, warranted not even

a mention.

But unlike the contrary line of cases, the Scelta line simply takes its proposition as an *ipse dixit.* It is a doctrine that just fell from the sky one day. No reason is offered for excluding statutory causes of action from serving as the underlying tort in cases of negligent supervision and retention. Certainly there is no history in Florida tort law of demoting statutory causes of action to a lower rank than common law actions. Indeed, the opposite is true, as will be shown momentarily.

A few other cases have followed Scelta on the disputed proposition. Kellaher v. Pall Aeropower Corp., 2001 WL 485119 *5 (M.D. Fla. February 8, 2001); Samedi v. Miami-Dade County 134 F. Supp.2d 1320, 1353 n.30; and Grice v. Air Products & Chemicals, Inc., 2000 WL 353010 *15 (N.D. Fla. February 17, 2000). The latter two, with Samedi relying on Grice, have made explicit what was merely implicit in Scelta, that Title VII can not be the underlying tort in the estimation of these courts.

Florida jurisprudence militates against these cases in several ways.

Violations of certain classes of statutes may give rise to a cause of action for strict liability or negligence per se. de Jesus v. Seaboard Coastline R.R. Co., 281 So. 2d 198 (Fla. 1973). In that regard, actions founded on statutory violations enjoy a privileged status not conferred upon mere common law torts.

Florida courts have long recognized causes of action in negligence for violations of a variety of statutes, Cape Publications, Inc. v. Hitchner, 514 So. 2d 1136 (Fla. 5th DCA 1987), rev'd on other grounds, 549 So. 2d 1374 (Fla. 1989) (confidentiality of certain public records); Tamiami Gun Shop v. Klein, 116 So. 2d 421 (Fla. 1959) (statute governing sale of firearms); and even for violations of administrative regulations, Florida Freight Terminal v. Cabanas, 354 So. 2d 1222 (Fla. 3d DCA 1978) (federal regulations governing loading cargo on airplanes).

The Florida Supreme Court set forth the means by which a legal duty may arise for tort purposes in McCain v. Florida Power Corp., 593 So. 2d 500, 503 (Fla. 1992).  The duty may arise from (1) legislative enactments or administrative regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) the general facts of the case.  Id. at n.2, citing Restatement (Second) of Torts § 285 (1965).  Statutory violations plainly provide a foundation under this typology, which remains the controlling law in Florida.

To sustain a cause of action against an employer for negligent retention, training and supervision, a plaintiff must prove only the following:  **one**, that the employer had a legal duty, arising out of the relationship between the employee who engaged in wrongful conduct and the plaintiff, **two**, that the employer breached its duty to the plaintiff, and **three**, that the employer's breach was the proximate cause of the plaintiff's harm.  Garcia v. Duffy, 492 So. 2d 435, 440 (Fla. 2d DCA 1986) (duty); Harrison v. Tallahassee Furniture, 583 So. 2d 744, 750 (Fla. 1st DCA 1991) (breach); Watson v. City of Hialeah, 552 So.2d 1146 (Fla. 3d DCA 1989) (proximate cause).  It is thus improper to add an additional element to the tort, namely, that the underlying wrong be grounded in common law rather than statute.  No state court has even suggested such a thing.  The few federal cases that have applied this requirement were not authorized to amend the elements of a state cause of action.  On questions of state law, federal courts are bound by the decisions of the Florida Supreme Court and the District Courts of Appeal where the Supreme Court has not spoken.  Geary Distributing Co. v. All Brand Importers, Inc., 931 F.2d 1431, 1434 (11th Cir. 1991); Royal Health Care Serv., Inc. v. Jefferson-Pilot Life Ins. Co., 924 F.2d 215, 216 (11th Cir. 1991); Maseda v. Honda Motor Co., 861 F.2d 1248, 1257 n.14 (11th Cir. 1988).

**B.  Impact Rule Not Applicable To Negligent Supervision And Retention**

In the second part of the motion to dismiss the count for negligent supervision and retention, Westgate argues that Plaintiff is forbidden under the impact rule from collecting damages on her negligent supervision and retention claim because the impact she suffered was insufficiently injurious.  Before addressing that, Plaintiff shows that the "impact rule" does not apply at all to this case.

The Florida Supreme Court has rejected the contention that any impact is needed in cases of this kind.  The "impact rule" is confined to actions founded on simple negligence, or more properly, negligent infliction of emotional distress, a cause of action which is not included in the instant action.  The Florida Supreme Court has noted that the "impact rule" is generally inapplicable to recognized torts in which damages often are primarily emotional, such as defamation or invasion of privacy, even where the damage is negligently rather than intentionally inflicted.  Kush v. Lloyd, 616 So. 2d 415, 422 (Fla. 1992), citing Restatement (Second) of Torts, §§ 569, 570, 652h cmt. b (1977).  The Title VII and whistleblower retaliation causes of action here are of the same nature in that they are not inherently physical.  Most retaliation claims are similar to libel and privacy in that they involve no physical conduct at all.  A typical exclusion from the impact rule for that reason is the tort arising from a breach of the duty of confidentiality of a therapist.  Gracey v. Eaker, 837 So. 2d 348, 356 (Fla. 2002).

Retaliation also differs from negligent infliction of emotional distress in that it is intentional rather than negligent.  The impact rule has never applied to intentional torts.  Holt v. Rowell, 850 So. 2d 474, 478 n.1 (Fla. 2003).  Here the torts underlying the negligent retention and supervision are intentional.  Where this is so, the negligent employer steps into the shoes of the intentionally

25

offending agent for liability purposes.

The impact rule does not apply where intangible damages do not stand alone as the measure of recovery, i.e., where there are also financial losses. In this case, in addition to intangible damages, there are lost income and loss of a job through retaliatory firing.

Likewise, the Florida Supreme Court has rejected application of the "impact rule" where emotional damages are an additional "parasitic" consequence of conduct that is an independent and freestanding tort apart from any emotional injury. Kush, 616 So. 2d at 422, *citing* Page Keeton, *et al*., Prosser & Keeton on the Law of Torts § 54, at 361-65 (5th ed. 1984). *See also* Friedman v. Mutual Broad. Sys., Inc., 380 So. 2d 1313, 1314 (Fla. 3d DCA 1980) ("independent tort" apart from negligent infliction of emotional distress may establish liability without impact). Because the impact rule originated with negligent infliction of emotional distress and has properly remained largely confined to that one tort, the case law has evolved a sometimes confusing nomenclature of "independent torts" and "parasitic damages." An "independent tort" in this context is anything other than negligent infliction of emotional distress. "Parasitic damages" are called that because they are not essential to the independent tort, but merely a parasitic attachment, whereas in negligent infliction of emotional distress, the emotional distress arising from negligence is basically the totality of the cause of action. Confusion arising from Kush on this point has been largely dispelled by the lucid discussion in Gracey v. Eaker, 837 So. 2d 348, 356 n.14 (Fla. 2002).

Negligent supervision and retention will always be "parasitic" in that the cause of action, by definition, feeds off the independent underlying tort. It is never a mere action for negligent infliction of emotional distress.

Even where, as here, an impact is shown, the defense argues that the impact is not injurious

26

enough.  They cite authority to the effect that Florida's "impact rule" requires not just impact but some sort of serious physical injury.  The Florida Supreme Court, the final arbiter of state law, disagrees.

> [T]o suffer an impact, a plaintiff may meet **rather slight requirements**, such as those described by the Third District in Eagle- Picher Industries, Inc. v. Cox, 481 So.2d 517 (Fla. 3d DCA 1985), review denied, 492 So.2d 1331 (Fla.1986):
>
>> The essence of impact, then, it seems, is that the outside force or substance, **no matter how large or small**, visible or invisible, and no matter that the effects are not immediately deleterious, touch or enter into the plaintiff's body.

Zell v. Meek, 665 So. 2d 1048, 1050 (Fla. 1996) (emphasis added) (adding, "This formulation is consistent with our own holdings").  In the context of sexual harassment, especially a case with unwanted touching, the offending intrusion rarely will draw blood or break a bone but is, for many, an indignity worse than a punch in the face.

In the Florida Supreme Court's leading sexual harassment case, Byrd v. Richardson-Greenshields, Inc., 552 So. 2d  1099 (Fla. 1989), negligent hiring and retention were among the counts alleged by the plaintiff, along with statutory causes of action, intentional infliction of emotional distress, and assault and battery.  Id. at 1100.  The Court noted that torts of this nature that are commonly asserted in sexual harassment cases "address the very essence of the policies against sexual harassment -- an injury to intangible personal rights."  Id. at 1104 (emphasis added).  Even when a sort of physical impact does occur in a sexual harassment context -- an unwanted sexual touching that offends without physically injuring -- the Supreme Court insists upon analyzing it not for its physical impact but its emotional damage:

> [W]e do not perceive the battery alleged in this case as involving wage loss or workplace injury, but an unlawful intrusion upon personal rights protected by

remedial legislation such as the Florida Human Rights Act.

Id. at 1104 n.8.

## CONCLUSION

Siegel's motion to dismiss (Doc. 53) and Westgate's motion to dismiss (Doc. 54) are both without merit and should be denied in their entirety.  These motions have delayed the answer and affirmative defenses, which has delayed response to paper discovery directed to those answers and affirmative defenses, which has, in turn, delayed scheduling of certain key depositions.

Respectfully submitted,

/s/ Richard E. Johnson
Richard E. Johnson, FL Bar No 858323
Andrea L. Reino, FL Bar No 427233
LAW OFFICE OF RICHARD E. JOHNSON
314 West Jefferson Street
Tallahassee, Florida 32301
Telephone:  (850) 425-1997
Facsimile:  (850) 561-0836

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 21, 2005, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following: Richard W. Epstein and Myrna L. Maysonet, Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., 201 East Pine Street, Suite 500, Orlando FL 32801.

/s/ Richard E. Johnson
Richard E. Johnson