FILED
IN OPEN COURT

FEB 2 0 2008 19

CLERK
U. S. DISTRICT COURT

**B-1**

## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DAWN GEORGETTE MYERS,**

**Plaintiff,**

-vs-                                Case No. **6:04-cv-1542-Orl-28DAB**

**CENTRAL FLORIDA INVESTMENTS INC., CFI SALES AND MARKETING, LTD., WESTGATE RESORTS, INC., and DAVID SIEGEL,**

**Defendants.**

---

## COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions – what we call your deliberations.

-1-

B-2.2

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence – that is, the testimony of the witnesses and the exhibits I have admitted in the record – but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual

-2-

knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

B-3

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

B-4.1

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately.   So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

C-1

It is entirely proper for a lawyer to talk to a witness about what testimony the witness would give if called to the courtroom. A witness should not be discredited by talking to a lawyer about his or her testimony.

C-2

As you were advised at the beginning of the trial, you are to disregard answers given by witnesses after an objection was sustained. You are also instructed that you should not draw any inference from the questions themselves.

B-6.2(M)

It is the responsibility of the Plaintiff to prove every essential part of her claims. This is sometimes called the "burden of proof" or the "burden of persuasion."

Except with regard to the issue of entitlement to punitive damages on the battery claim, as to which you will be instructed later, Plaintiff must prove each part of her claims by a "preponderance of the evidence." A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim is more likely true than not true.

When more than one claim is involved, you should consider each claim separately; but in deciding whether any fact has been proved, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim, you should find for the Defendants as to that claim.

C-3

In this case you have been permitted to take notes during the course of the trial, and most of you – perhaps all of you – have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

F-1.10.4.1

It is not always clear under the law whether a person is an "employee" or not, or who the "employer" is. Some people, for example, perform services for others while remaining self employed as "independent contractors."

So, a preliminary issue for your decision with regard to the Plaintiff's first claim is the question whether the Plaintiff, Georgette Myers, was an employee of Central Florida Investments, Inc., or CFI Sales & Marketing, Ltd., or Westgate Resorts, Inc., or Westgate Resorts, Ltd., or whether Ms. Myers was, instead, an independent contractor. You should resolve this question in light of the economic realities of the entire relationship of the parties, and there are a number of factors you must consider, based on all the evidence in this case.

In an employer/employee relationship, the employer has the right to control the work of the employee, and to set the means and manner in which the work is done, as well as the hours of work. In contrast, an independent contractor generally must accomplish a certain work assignment within a desired time, but the details, means, and manner by which that assignment is accomplished are determined by the independent contractor, normally using

special skills necessary to perform that kind of work.

An employee is usually paid on a time worked, piecework, or commission basis, and usually has vacation or sick time allowed, as well as insurance, retirement, and other fringe benefits provided by the employer. An independent contractor is ordinarily paid an agreed or set amount, or according to an agreed formula, for a given task or job.

An independent contractor generally is one who has the opportunity to make a profit or faces a risk of taking a loss, while an employee generally is compensated at a predetermined rate, has no risk of loss, and has social security taxes paid by the employer.

An independent contractor usually provides the tools, equipment, and supplies necessary to do the job, while an employee usually does not. Independent contractors generally offer their services to the public or others in a particular industry, have procured necessary licenses for the carrying on of their activities, and may have a business name or listing in the phone book. Employees ordinarily work only for one or just a few employers, and do not have business names or listings.

The intent of the parties is, of course, always important, but the

description the parties themselves give to their relationship is not controlling; substance governs over form.

Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the right to control the means and manner of the worker's performance is the most important factor.

F-1.2.2

In her first claim in this case, the Plaintiff makes a claim against the corporate Defendants – Central Florida Investments, Inc., CFI Sales & Marketing, Ltd., Westgate Resorts, Inc., and Westgate Resorts, Ltd. – under the federal and Florida civil rights statutes that prohibit employers from discriminating against employees in the terms and conditions of their employment because of the employee's sex or gender.

More specifically, the Plaintiff claims that she was subjected to a hostile or abusive work environment because of sexual harassment, which is a form of prohibited employment discrimination.

In order to prevail on this claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That David Siegel subjected the Plaintiff to a hostile or abusive work environment, as hereafter defined, because of the Plaintiff's sex or gender; and

Second: That the Plaintiff suffered damages as a proximate or legal result of such hostile or abusive work environment.

In the verdict form that I will explain in a moment, you will be asked to answer a series of questions concerning each of these factual issues.

A work environment is hostile or abusive because of sexual harassment only if (1) the Plaintiff was subjected to sexually offensive acts or statements; (2) such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the Plaintiff's own acts or statements; (3) such acts or statements resulted in a work environment that was so permeated with discriminatory intimidation, ridicule, or insult of sufficient severity or pervasiveness that it materially altered the conditions of the Plaintiff's employment; (4) a reasonable person, as distinguished from someone who is unduly sensitive, would have found the workplace to be hostile or abusive; and (5) the Plaintiff personally believed the workplace environment to be hostile or abusive.

Whether a workplace environment is "hostile" or "abusive" can be determined only by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; and whether it unreasonably interfered with the employee's work performance. The effect on the employee's mental and emotional well being

-14-

is also relevant to determining whether the Plaintiff actually found the workplace environment to be hostile or abusive; but while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Conduct that only amounts to ordinary socializing in the workplace such as occasional horseplay, sexual flirtation, sporadic or occasional use of abusive language, gender related jokes, and occasional teasing, does not constitute an abusive or hostile environment. Only extreme conduct amounting to a material change in the terms and conditions of employment is actionable.

When a hostile or abusive work environment is created by the conduct of a supervisor with immediate or successively higher authority over the Plaintiff, the Defendant employer is responsible under the law for such behavior and the resulting work environment. It is undisputed that David Siegel was a supervisor with immediate or successively higher authority over the Plaintiff.

In order for the Plaintiff to recover damages for having been exposed to a discriminatorily hostile or abusive work environment, her claim must have been filed in a timely manner. If you find that Plaintiff has established her

sexual harassment claim by a preponderance of the evidence, you must then decide if at least one of the acts of sexual harassment took place on or after September 15, 2000. If you find that all of the incidents of sexual harassment occurred before September 15, 2000, then Plaintiff's sexual harassment claim is untimely. You may not award damages on Plaintiff's sexual harassment claim unless you find that at least one of the acts of sexual harassment occurred on or after September 15, 2000.

Finally, in order for the Plaintiff to recover damages for having been exposed to a discriminatorily hostile or abusive work environment because of sex, the Plaintiff must prove that such damages were proximately or legally caused by the unlawful discrimination. For damages to be the proximate or legal result of unlawful conduct, it must be shown that, except for such conduct, the damages would not have occurred.

If you find that the Plaintiff has proved her claim, you must then determine the amount of damages the Plaintiff has sustained.

In considering the issue of the Plaintiff's damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all of the Plaintiff's

damages, no more and no less.  Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize a Defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

Compensatory damages cover both the mental and physical aspects of injury – tangible and intangible.  Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced.  In that respect it is not value you are trying to determine, but an amount that will fairly compensate the Plaintiff for those claims of damage. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence, and no others:

(a) Emotional pain and mental anguish; and

(b) Punitive damages, if any (as explained in the Court's instructions).

The Plaintiff also claims that the acts of David Siegel were done with malice or reckless indifference to the Plaintiff's state- and federally-protected rights so as to entitle the Plaintiff to an award of punitive damages in addition

to compensatory damages.

In some cases punitive damages may be awarded for the purpose of punishing a Defendant for wrongful conduct and to deter others from engaging in similar wrongful conduct.    An award of punitive damages would be appropriate only if you find for the Plaintiff and then further find from a preponderance of the evidence that David Siegel personally acted with malice or reckless indifference to the Plaintiff's state- and federally-protected rights. If you find that punitive damages should be assessed against a Defendant, you may consider the financial resources of that Defendant in fixing the amount of such damages.

You are reminded that this claim is brought against the corporate Defendants only, and not against David Siegel individually. Thus, although you have heard testimony regarding David Siegel's financial resources, you may not consider his financial resources in fixing the amount of punitive damages, if any, on this claim.  Rather, you may only consider the financial resources of whichever corporate entity or entities, if any, you determine employed Ms. Myers.

C-4

You are reminded that this case involves a claim of sexual harassment resulting in a hostile work environment, as well as a claim of battery. You have heard testimony during the trial that the Defendant companies terminated the Plaintiff's employment in December of 2000. This case, however, does not involve any claim that the termination was wrongful, unjust, unfair, or related to the Plaintiff's sexual harassment allegations. Consequently, you are not here to decide whether the Defendant companies had a right to terminate the Plaintiff's employment or whether the decision to terminate the Plaintiff was correct or even fair. Because the termination of the Plaintiff is not an issue here, the Plaintiff cannot seek or recover damages as a result of the termination. The elements of the Plaintiff's damages are limited to those set forth in these instructions.

Additionally, you have heard testimony regarding the Plaintiff's past employment as a waitress. As I instructed you earlier, however, this evidence is offered only to rebut allegations regarding the Plaintiff's reputation and rumors that the Plaintiff alleges caused her embarrassment. You are further

instructed that this testimony is not offered to establish that the Plaintiff engaged in other sexual behavior or as evidence of a sexual predisposition on the part of the Plaintiff. You are also instructed that this testimony is not to be considered as evidence that the Plaintiff welcomed David Siegel's alleged conduct.

C-5

In her second claim in this case, the Plaintiff claims that Defendant David Siegel committed battery against her. She asserts this claim against both David Siegel individually and the corporate entity Defendants.

A battery is an intentional infliction of a harmful or offensive contact upon the person of another. To prevail on her battery claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:   That David Siegel intended to touch the Plaintiff's person;

Second:   That David Siegel actually touched the Plaintiff against her will; and

Third:   That the contact was harmful or offensive to the Plaintiff.

If the preponderance of the evidence does not support the Plaintiff's battery claim, your verdict should be for the Defendants. However, if the preponderance of the evidence does support the Plaintiff's battery claim, then you must decide if the battery occurred within the statute of limitations prescribed by law. If you find that the incidents on which she based her battery claim occurred before May 21, 2000, then Plaintiff's battery claim is untimely.

-21-

Therefore, you may not award damages on Plaintiff's claim for battery unless you find that the conduct occurred on or after May 21, 2000.

If you find for the Defendants on the merits of the battery claim, or if you find that none of the conduct occurred on or after May 21, 2000, you will not consider the matter of damages. But, if you find for the Plaintiff and you find that conduct amounting to battery occurred on or after that date, you should award the Plaintiff an amount of money that the preponderance of the evidence shows will fairly and adequately compensate the Plaintiff for such harm or offense as the preponderance of the evidence shows was caused by the battery. Battery is a cause of offense or harm if it directly and in a natural and continuous sequence produces or contributes substantially to producing such offense or harm.

In considering the issue of the Plaintiff's damages on this claim, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as fair and adequate compensation for all of the Plaintiff's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize a Defendant. Also, compensatory damages must not be based on speculation

or guesswork because it is only actual damages that are recoverable.

Compensatory damages cover both the mental and physical aspects of injury – tangible and intangible. There is no exact standard for fixing the compensation to be awarded. Any award should be fair and just in light of the evidence.

Plaintiff also seeks an award of punitive damages on her battery claim. If you find for the Plaintiff and against the Defendants on the battery claim, you should consider whether, in addition to compensatory damages, punitive damages are warranted in the circumstances of this case as punishment and as a deterrent to others.

The Defendants may be held liable for punitive damages on the battery claim only if you find, based on clear and convincing evidence, that David Siegel was personally guilty of intentional misconduct. "Intentional misconduct" means that David Siegel had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. "Clear and convincing evidence" differs from a "preponderance of the evidence" in that it is more compelling and

persuasive. As I instructed you earlier, a "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim is more likely true than not true. In contrast, "clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

If you determine that the Plaintiff has established by clear and convincing evidence entitlement to an award of punitive damages, then you shall consider the amount of such punitive damages. In determining the amount of punitive damages, if any, to be assessed as punishment and as a deterrent to others, you should decide any disputed factual issues by a preponderance of the evidence, as defined earlier. You should consider the following:

(1) the nature, extent, and degree of misconduct and the related circumstances, including whether, at the time of the injury or damage, David Siegel had a specific intent to harm the Plaintiff and the conduct of David Siegel did in fact harm the Plaintiff; and

(2) each Defendant's financial resources.

However, you may not award an amount that would financially destroy the Defendants.

Any punitive damages you assess would be in addition to any

compensatory damages you award.  You may in your discretion decline to assess punitive damages.

B-7.1

Of course, the fact that I have given you instructions concerning the issue of the Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

B-8

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.